**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-03408-CMA-KMT

CHARLOTTE TIMMONS,

    Plaintiff,

v.

LOCKHEED MARTIN CORP.,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Lockheed Martin Corp.'s Motion for Summary Judgment (Doc. # 20). For the reasons discussed below, Defendant's motion is granted.

**I. BACKGROUND**

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

Plaintiff Charlotte Timmons was hired by Defendant in 1985 as an illustrator and was promoted to Manager of the Media Group at the Stennis Space Center in the mid-1990s. (Doc. ## 20, ¶¶ 1, 2; 29, ¶¶ 1, 2.) In 2004, Eileen Nicholson promoted Timmons, then 56 years old, to Multi-Function Publications Manager at Defendant's Littleton, Colorado facility. (Doc. ## 20, ¶¶ 6, 7, 8; 29, ¶¶ 6, 7, 8.)

Each year, Timmons' supervisors gave her a Performance Assessment and Development Review ("PADR") which had five possible ratings (from high to low): Exceptional Contributor, High Contributor, Successful Contributor, Basic Contributor, and Unsatisfactory. (Doc. ## 20, ¶¶ 23, 24; 29, ¶¶ 23, 24.) In 2006, Nicholson rated Timmons a "Successful Contributor" but noted that Timmons should attend leadership training and "be aware of how she communicates with her employees." (Doc. ## 20, ¶ 25; 29, ¶ 25.) The next year, Nicholson gave Timmons a "Successful Contributor" rating but noted that Timmons needed to attend leadership training. (Doc. ## 20, ¶ 26; 29, ¶ 26.)

In 2008, Nicholson promoted Andrew Bilotta to a position where he was responsible for reviewing Timmons' performance. (Doc. ## 20, ¶ 27; 29, ¶ 27.) That year, Bilotta gave Timmons a "Basic Contributor" rating on her PADR and noted that "she [had] not been effective with relationships with her direct reports due to a perception of trust and retaliation." (Doc. ## 20, ¶ 31; 29, ¶ 31.) Timmons did not like that Nicholson promoted Bilotta in 2008. (Doc. ## 20, ¶ 37; 29, ¶ 37.) In fact, Timmons complained to Human Resources, Ethics, and Legal about Bilotta's promotion, her "Basic Contributor" rating, and allegedly harassing and hostile behavior by Nicholson. (Doc. ## 20, ¶ 38; 29, ¶ 38.) In these complaints, Timmons never claimed that Bilotta or Nicholson harassed or discriminated against her because of her age. (Doc. ## 20, ¶ 41; 29, ¶ 41.) Timmons' complaints were investigated but could not be substantiated.[1]

---

[1] In her response, Timmons does not address whether the investigation could substantiate her claims; rather, Timmons simply asserts that the allegations she made were true. (Doc. # 29, ¶ 40.) Because Timmons failed to admit or deny the assertion of fact at issue, the Court treats

(Doc. ## 20, ¶ 40; 29, ¶ 40; 20-4, ¶ 5; 20-10, ¶ 5; 20-11.)  At the end of 2008, Bilotta was placed back into his former role, and Timmons once again reported directly to Nicholson.  (Doc. ## 20, ¶ 33; 29, ¶ 33.)  In 2009, Nicholson rated Timmons as a "Successful Contributor" and arranged for Timmons to have a mentor to assist her in a leadership project.  (Doc. ## 20, ¶¶ 34, 35; 29, ¶¶ 34, 35.)  Additionally, Nicholson approved Timmons' request to attend a management course.  (Doc. ## 20, ¶ 36; 29, ¶ 36.)

In 2010, William O'Beirne – an employee who reported directly to Timmons – told her that he believed another employee was mischarging his time.  (Doc. ## 20, ¶¶ 46, 47; 29, ¶¶ 46, 47.)  Timmons looked into the claim and then notified O'Beirne that she did not believe the employee was mischarging his time.  (Doc. ## 20, ¶ 48; 29, ¶ 48.)  O'Beirne was unsatisfied with Timmons' response and followed-up by reporting his concerns to Ethics in August 2010.  (Doc. ## 20, ¶ 49; 29, ¶ 49.)  Ethics informed Timmons about O'Beirne's complaint and the subsequent investigation into the mischarged time.  (Doc. ## 20, ¶ 50; 29, ¶ 50.)  Timmons told at least three employees that she was not happy that O'Beirne took his complaints to Ethics.  (Doc. ## 20, ¶¶ 51, 52; 29, ¶¶ 51, 52.)  Shortly thereafter, Timmons questioned O'Beirne's coworkers about his personal life and relationships, including whether he had a drinking problem.  (Doc. ## 20, ¶¶ 54, 55; 29, ¶¶ 54, 55.)  In response to these and other actions by Timmons,

---

this fact as admitted for purposes of this motion.  See Fed. R. Civ. P. 56(e)(2)-(3) ("If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it.").

on October 13, 2010, O'Beirne filed a second complaint with Ethics alleging that Timmons had retaliated against him for filing the August 2010 complaint. (Doc. ## 20, ¶ 58; 29, ¶ 58; 20-12.) The Ethics Department investigated and substantiated O'Beirne's October 2010 retaliation allegations against Timmons. (Doc. ## 20, ¶ 62; 20-12.) The matter was then referred to Defendant's Executive Review Committee ("ERC") which reviewed the Ethics investigation report and determined that Timmons' actions constituted a serious violation of Defendant's policies.[2] (Doc. ## 20, ¶¶ 63; 66; 70; 79.) As a result of the ERC's determination, Timmons was terminated on November 29, 2010. (Doc. ## 20, ¶ 80; 29, ¶ 80.)

On December 30, 2011, Timmons initiated this action by filing a Complaint, in which she alleged that Defendant discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and retaliated against her for having complained about age discrimination. (Doc. # 1.) Defendant filed the instant Motion for Summary Judgment on December 7, 2012 (Doc. # 20), to which Timmons responded on January 3, 2013 (Doc. # 21). On January 14, 2013, Defendant filed its Reply, along with a Motion to Strike Timmons' Response for failure to comply with the Local and Federal Rules and the Court's Civil Practice Standards. (Doc. # 27.) The Court granted Defendant's motion in part, striking

---

[2] Timmons was not a party to the ERC meeting and therefore neither admits nor denies these facts. (Doc. # 29, ¶¶ 63, 66, 70, 79.)

Timmons' Response.  (Doc. # 28.)  On January 21, 2013, Timmons filed an Amended Response (Doc. # 29), to which Defendant replied on January 29, 2013 (Doc. # 30).[3]

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs.*, *Inc.,* 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.*  In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim.  *Adler v Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

---

[3] As discussed, *infra*, Timmons' amended response still fails to comply with the Court's Local Rules and Civil Practice Standards.

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. DISCUSSION

Before addressing the merits of Defendant's motion, the Court is compelled to comment on the egregious substantive and non-substantive failings of the response filed by Timmons' counsel.  As a general matter, "[a] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1325 (10th Cir. 1987) (quoting *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)).  Not only is Timmons' response devoid of citations to **any** legal authority in the four short paragraphs that constitute the "Analysis" portion of her response (*see* Doc. # 29 at 18-19), only two of the four cases that are cited by

Timmons arguably support her claims.[4]  Timmons' second "check marked" paragraph on page one of her response begins with an incomplete sentence regarding retaliation in response to efforts to "vindicate the rights of a minority coworker." (Doc. # 29 at √2.) In support of this statement, Timmons has inserted a five paragraph quote (with no punctuation to indicate it is a quote) from *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997-99 (10th Cir. 2011), regarding how a plaintiff may prove a retaliation claim. However, the instant case has nothing to do with alleged retaliation for the vindication of a minority co-worker's rights.  Likewise, the Court is at a loss as to why Timmons quoted the following language from headnote 9 of *Thomas v. Ragland*, 324 F. Supp. 2d. 950 (W.D. Wis. 2004): "City employee was engaging in conduct protected by both First Amendment and Title VII, when she filed ethics complaint with city, challenging [a] promotion."[5]  Timmons is not a city employee nor does she raise any claims involving the First Amendment or Title VII.  Finally, the Court agrees with Defendant (Doc. # 30 at 5 n.3) that Timmons' potentially libelous statements regarding Nicholson's alleged relationship with a co-worker is, at best, out-of-line and inappropriate (*see* Doc. # 29 at 19-20).  Such poor lawyering cannot go unchecked by the Court.  Thus, the Court will

---

[4] In addition to failing to provide any meaningful legal analysis and argument in opposition to the motion for summary judgment, the Court notes that the pleading submitted by counsel for Timmons is one of the most shoddily drafted the Court has ever seen.  The Court is disturbed by counsel's complete lack of attention and care in drafting this response.  In addition to making no effort whatsoever to comply with Blue Book citation form or CMA Civ. Practice Standards III.A.2., D.C.COLO.LCivR 7.1.D., 10.1.C, and 10.1.J, the 20-page pleading contains incomplete sentences and more than 50 spelling and grammatical errors.  The Court admonishes counsel that the next time he submits a pleading to this Court, he had better take the time necessary to both proofread his work and familiarize himself with this Court's practice standards and proper Blue Book citation form.

[5] Timmons' counsel neither indicated that this was a direct quote of the headnote nor did he provide a pinpoint citation.

provide Defendant an opportunity to brief its request for attorney fees, as discussed below.

**A.    LAW**

The ADEA prohibits employers from discharging or otherwise discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It protects employees, like Plaintiff, who are forty years of age or older. *Id.* at 631(a). The ADEA requires "but-for" causation, meaning that a plaintiff claiming age discrimination must establish by a preponderance of the evidence that, but for her age, her employer would not have taken the subject adverse action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). "*Gross* does not disturb the longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Absent direct proof of discriminatory intent, Timmons may prove discrimination indirectly, using the *McDonnell Douglas* three-part burden-shifting framework. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

In the instant case, Timmons has not presented any direct evidence of Defendant's discriminatory intent and, therefore, must proceed under the *McDonnell Douglas* framework. At step one of the *McDonnell Douglas* inquiry, Timmons must establish a *prima facie* case for each of her claims. *McDonnell Douglas Corp.*, 411 U.S.

at 802. For her age discrimination claim, Timmons must prove that: (1) she belongs to a protected age group; (2) her job performance was satisfactory; (3) she was discharged; and (4) she was replaced by a substantially younger person. *See Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 484 (10th Cir. 1995). For her retaliation claim, Timmons must prove that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *See Armstead v. Wood*, No. 10-CV-02783, 2012 WL 2298495, at *8-9 (D. Colo. June 15, 2012) (unpublished) (citing *Mathews v. Denver Newspaper Agency, LLP*, 649 F.3d 1199, 1210 (10th Cir. 2011)). If Timmons succeeds in establishing a *prima facie* case for either claim, the burden shifts to Defendant to state a legitimate, nondiscriminatory reason for its adverse employment action. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004). If Defendant produces a legitimate reason, then the Court must grant Defendant's motion for summary judgment, unless Timmons can show a genuine dispute of material fact as to whether Defendant's stated reason for the adverse action is pretextual. *Id.*

**B. ANALYSIS**

In her Amended Complaint, despite brining claims under the ADEA for age discrimination and retaliation (Doc. # 3 at 3), Timmons has abandoned her age discrimination claim because she failed to address it in her response to Defendant's Motion for Summary Judgment and, as such, has failed to show a genuine dispute of material fact as to this claim. The Court thus grants summary judgment as to Timmons' first claim. *See Conagra Trade Group, Inc. v. Fuel Exploration, LLC*, 636 F. Supp. 2d

1166, 1171 (D. Colo. 2009) (granting summary judgment on a claim that the plaintiff effectively abandoned by failing to address it in response to a motion for summary judgment); *see also Hinsdale v. City of Liberal, Kan.*, 19 Fed. App'x 749, 768-69 (10th Cir. 2001) (unpublished) (affirming the district court's grant of summary judgment on a claim that the plaintiff abandoned by virtue of his failure to address it in his response to summary judgment); *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992) (same).

In addition to her age discrimination claim, Timmons raised a claim for retaliation "for having complained of age discrimination." (Doc. # 3 at 1.) However, Timmons has failed to show that she engaged in protected activity as required for the first element of her *prima facie* case of retaliation. Timmons generally states, without citing to any supporting facts, that she engaged in "protected free speech" when she filed "the ethics complant [*sic*] over the demotion."[6] (Doc # 29 at 19.) Additionally, Timmons alleges that she was retaliated against for making formal complaints regarding her dissatisfaction with Bilotta's promotion and her "basic rating" on the 2008 PADR, which she perceived to be "unfair and undeserved." (Doc. # 20-1 at 7.) In these complaints, filed with Defendant's Legal, Ethics, and Human Resources departments, Timmons never complained of age discrimination, or stated that she was treated unfairly due to her age. (Doc. ## 20-1 at 9-12; 20-4, ¶¶ 5-6; 20-10, ¶ 5; 20-11.) Complaints about "unfair treatment in general" and "dissatisfaction" do not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation. *See O'Neal v. Ferguson Const. Co.*,

---

[6] There is no evidence before the Court that Timmons was demoted. (*See* Doc. ## 20, 29.)

237 F.3d 1248, 1255 (10th Cir. 2001) (a complaint that did not specifically assert age discrimination failed to constitute "protected conduct" for a retaliation claim under the ADEA); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("[a]lthough no magic words are required . . . [g]eneral complaints about company management and one's own negative performance evaluation" do not constitute protected activity); *Anderson v. Acad. Sch. Dist. 20*, 122 Fed. App'x 912, 916 (10th Cir. 2004) (unpublished) ("[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by [age] does not constitute protected activity and will not support a retaliation claim."); *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding that employee's grievance about performance evaluation, which was not based on unlawful discrimination, did not constitute statutorily protected activity); *Ashkin v. Time Warner Cable Corp.*, 52 F.3d 140, 143-44 (7th Cir. 1995) (concluding that a complaint about management style, which does not mention unlawful harassment or discrimination, is not protected opposition). Timmons has failed to provide any evidence that she engaged in protected activity and has failed to show a genuine dispute of material fact as to this element of her *prima facie* case. Thus, summary judgment is appropriate on this claim.

Even assuming, *arguendo*, that Timmons was able to prove that she engaged in protected conduct, she has failed to demonstrate that she suffered an adverse employment action as a result of such conduct. "An adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620 (10th Cir. 2012) (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007)). Rather than suffering an adverse "significant change in employment status," shortly after filing her complaints Timmons received an improved score on her PADR, a pay raise, and approval to attend a management training program. (Doc. ## 20, ¶¶ 34, 36; 29, ¶¶ 34, 36.) The undisputed facts show that Timmons' sole adverse employment action was her termination on November 29, 2010.[7] However, standing alone, Timmons' termination is insufficient to establish causation. "The date of Plaintiff's termination is key to this inquiry because the closer it occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). In the instant case, Timmons has failed to establish causation because more than two years passed between her complaints in 2008 and her termination on November 29, 2010, and no evidence of a pattern of retaliatory conduct exists. (*See* Doc. ## 20; 26; 29; 30); *see also Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (where there is a pattern of retaliatory conduct that begins soon after the protected conduct and only culminates later in actual discharge, retaliatory intent may be inferred). Thus, summary judgment is appropriate for this claim.

---

[7] Timmons "basic contributor" rating on her 2008 PADR was not an adverse employment action because it did not cause a significant change in employment status. *See Armstead*, 2012 WL 2298495, at *7 (finding that poor job evaluation is not an adverse employment action unless it causes a significant change in employment status).

12

## IV. **CONCLUSION**

For the forgoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. # 20) is GRANTED. It is

FURTHER ORDERED that the Final Trial Preparation Conference, set for July 12, 2013, and the five-day Jury Trial, set to begin July 22, 2013, are VACATED. It is

FURTHER ORDERED that Defendant shall have 14 days from the date of this Order to move for attorney fees. The motion should include discussion of: (1) the Court's authority to award the requested relief; (2) the amount of the proposed award; and (3) the reasonableness of such request. Plaintiff Timmons shall have 10 days in which to respond, and Defendant shall have 7 days to file a reply.

DATED:  June __07__, 2013

                                                  BY THE COURT:

                                                  */s/ Christine M. Arguello*

                                                  CHRISTINE M. ARGUELLO
                                                  United States District Judge